IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CONTINENTAL RESOURCES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WOLLA OILFIELD SERVICES LLC, )<br>)<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 20-cv-200-PRW |

## AMENDED COMPLAINT

Plaintiff Continental Resources, Inc., (hereinafter "Continental") files this Amended Complaint against Defendant Wolla Oilfield Services LLC ("Wolla Oilfield"), and alleges as follows:

## INTRODUCTION

1. This action involves a systematic scheme by Wolla Oilfield to bilk Continental out of millions of dollars. Under a contract between the parties, Wolla Oilfield agreed to provide Continental with hot oil services for its wells in North Dakota with the work to be paid on an hourly basis.

2. Instead, Wolla Oilfield consistently billed Continental for work that Wolla Oilfield did not perform at all. As described in detail below, Wolla Oilfield violated the parties' contract and other laws, and is liable to Continental for the damages it has caused.

{S541260;}

## PARTIES

3. Continental is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.

4. Wolla Oilfield Services is a limited liability corporation organized under the laws of North Dakota, with its principal place of business in North Dakota. Upon information and belief, Wolla Oilfield's members are Jason Wolla and Samantha Oyloe, both of whom reside in North Dakota. Jason Wolla manages Wolla Oilfield.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 since the matter in controversy exceeds $75,000 and is between citizens of different states. This Court has supplemental jurisdiction over the state law claims asserted in this Complaint pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Wolla Oilfield because Wolla Oilfield consented to the jurisdiction of this Court in the contract between the parties.

7. Venue is proper in this district because Wolla Oilfield has consented to this venue in the contract between the parties. Furthermore, venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim (*e.g.*, the receipt and payment of fraudulent invoices) occurred in the Western District of Oklahoma.

## **GENERAL ALLEGATIONS**

The Master Service Contract

8. On April 4, 2016, Continental and Wolla Oilfield entered into a Master Service Contract (the "MSC," attached hereto as Exhibit 1).  Pursuant to the MSC, Wolla Oilfield agreed to provide hot oil services for Continental's oil wells in North Dakota.

9. Hot oil service is a necessary part of oil and gas production.  During the hot oil service process, blockages in the wells are cleared and prevented by circulating heated fluid into the piping, tubing, pipelines, or tanks associated with the wells.  Hot oil service is performed using hot oil trucks that are capable of heating and circulating the fluid used in the process.  Hot oil trucks are driven by individuals employed by Wolla Oilfield.

10. Under the MSC, Wolla Oilfield agreed to charge Continental an hourly rate for the hot oil services provided to Continental (*see* Rate Sheet, attached hereto as Exhibit 2).  Pursuant to § 9.3 of the MSC, Wolla Oilfield agreed to submit its invoices to Continental for approval and payment in Oklahoma using an online system called OpenInvoice.  Wolla Oilfield attached invoices and work tickets its employees prepared to these online invoices as supporting documentation.

11. Pursuant to § 15.1 of the MSC, Wolla Oilfield agreed all invoices, financial settlements, billings and reports submitted to Continental would accurately reflect the work done, and that those documents would be complete and accurate, and that it would conduct its operations in accordance with all applicable laws, rules, and regulations.

12. Under applicable law and the MSC, Wolla Oilfield was required to comply with U.S. Department of Transportation ("DOT") regulations including, among other

things, regulations prohibiting drivers from driving for more than 14 consecutive hours after coming on duty.

Wolla's Fraudulent Billing Scheme

13. From January 2017 to the beginning of December 2019, Wolla Oilfield billed Continental on a biweekly basis for each well for hot oil services it allegedly performed. During that time, Wolla Oilfield billed Continental for approximately $7.7 million.

14. In September 2019, Continental learned Wolla Oilfield had been engaging in a brazen scheme to defraud Continental out of millions of dollars. At that time, an employee in Wolla Oilfield's accounting department contacted Continental and disclosed that Wolla Oilfield was systematically overbilling Continental and its other customers for the work it was allegedly performing (the "Whistleblower"). This Whistleblower explained that Wolla Oilfield was training its hot oil truck drivers to manipulate their time entries to overbill Wolla Oilfield's customers without being detected, and that these employees were incentivized to engage in this fraudulent behavior because they were paid for each hour they billed to a customer, regardless of whether they were actually working.

15. These fraudulent overbilling activities were directed by Wolla Oilfield's upper management. Among other things, Jason Wolla directed employees not to put contemporaneous time stamps on work tickets or use GPS trackers so as not to draw attention to their business and billing practices. He also directed Wolla Oilfield's

accounting department to inflate the hours accounting department employees assigned to certain employees.

The Continental Audit

16. As a result of the information provided by the Whistleblower, Continental initiated an audit of Wolla Oilfield's records, pursuant to the MSC. The audit was conducted in October and November of 2019.

17. During the audit, representatives from Continental met with Wolla Oilfield management and employees. During the audit meetings, Wolla Oilfield and Jason Wolla claimed Wolla Oilfield had extensive back office personnel handling the accounting and billing, that another oil producer had audited Wolla Oilfield and found no issues, and repeatedly assured Continental Wolla Oilfield's business practices were proper and legitimate.

18. On October 22, 2019, Jason Wolla assured Continental's auditors the time Wolla Oilfield billed to Continental was based on the actual time worked by its drivers, Wolla Oilfield's management cross-checked and validated the hours its drivers worked, and that no invoice is processed with excessive time or time not worked. Furthermore, Wolla Oilfield employees assured Continental it had not been overbilled, double-billed, or ghost billed (*i.e.*, billed for work that was not performed).

19. On October 31, 2019, Jason Wolla assured Continental's auditors "with 100% certainty" that Wolla Oilfield had never billed Continental for a job that Wolla had not done, and that every job Wolla had done had been for the agreed-upon pricing.

20.     Wolla Oilfield and Jason Wolla's assurances were completely false. Continental's auditors confirmed the Whistleblower's account – Wolla Oilfield was engaged in a systematic effort to overbill Continental through fraudulent billing tactics, and consistently billed Continental for more hours than its employees actually worked.

21.     The timesheets Wolla Oilfield's drivers submitted to Wolla Oilfield consistently showed drivers actually worked less than 10 hours a day on average, but that Wolla Oilfield billed Continental for significantly more.  In fact, Wolla Oilfield employees would often bill Continental for *more than 24 hours of work in a day*.  For example, one Wolla Oilfield employee billed Continental and other customers for 28 hours on August 5, 2019, and 29.5 hours on August 6, 2019, even though his actual timesheet shows he only worked 12 hours on each of those days (*see* Example Time Sheet, attached hereto as Exhibit 3).

22.     Wolla Oilfield attempted to hide its pervasive over-billing practices by falsifying its documents and records.  Since DOT regulations clearly state a commercial truck driver cannot work for more than 14 consecutive hours, customers would obviously be concerned if they were billed by a driver for more than 14 hours in a single day. Accordingly, to avoid detection of their scheme, Wolla Oilfield's management and accounting personnel manipulated the driver's work tickets and customer invoices by moving the fraudulent hours to different days, so that the billings for any day would not exceed 14 hours.

23. In addition to Wolla Oilfield fraudulently misstating the hours its employees worked and billing Continental for those inflated hours, Wolla Oilfield also excessively marked up the cost of propane (which is used in the hot oil service process), even though the parties agreed propane would be charged to Continental at cost as a pass-through item. These excessive mark-ups caused Continental to overpay Wolla Oilfield for propane by over $700,000 alone.

Visual Surveillance

24. To confirm and validate the information learned from the Whistleblower and its audit, Continental installed cameras at various well sites Wolla Oilfield serviced. This surveillance demonstrated Wolla Oilfield billed Continental for time its drivers were not even at the well locations.

25. The surveillance footage revealed Wolla Oilfield personnel spent, on average, 15 minutes at each Continental well, but billed for several hours of time. For example:

   a. On September 27, 2019, Wolla billed Continental for six hours of work that its employee allegedly performed at the Corsican Federal 1-8 Well Pad. However, Continental's visual surveillance showed the Wolla employee was on location for only one hour and nineteen minutes that day.

   b. On October 17, 2019, Wolla billed Continental for an hour of work its employee allegedly performed at the Rath Federal 7-22H and Rath Federal 9-22H wells on October 1, 2019. However, Continental's visual

surveillance showed the Wolla employee was on location for only eighteen minutes that day.

26. The visual surveillance also revealed Wolla Oilfield repeatedly "ghost billed" Continental – that is, billed Continental for work even though no Wolla Oilfield employees ever came to the Continental wells on those days. For example:

   a. On September 28, 2019, Wolla billed Continental for work that its employee allegedly performed at the Salo 2-35H and Hamlet 3-2H wells. However, Continental's visual surveillance showed that no Wolla employee was present at those locations on that day.

   b. On October 3, 2019, Wolla Oilfield sent Continental five invoices and billed Continental for 5 hours of work its employees allegedly performed at the Rath Federal 6-22H1, 7-22H, 8-22H2, 9-22H, and 12-22H2 wells on September 26, 2019. However, Continental's visual surveillance showed no Wolla employee came to those locations on that day.

   c. On October 3, 2019, Wolla Oilfield sent Continental two invoices and billed Continental for two hours of work its employees allegedly performed at the Hamlet 3-2H and Salo 2-35H wells on September 28, 2019. However, Continental's visual surveillance showed no Wolla employee came to those locations on that day.

   d. On October 16, 2019, Wolla Oilfield sent Continental two invoices and billed Continental for two hours of work its employees allegedly performed at the Corsican Federal 1-15H and 2-15H1 wells on October 2, 2019.

However, Continental's visual surveillance showed no Wolla employee came to those locations on that day.

e. On October 17, 2019, Wolla Oilfield sent Continental three invoices for three hours of work its employees allegedly performed at the Rath Federal 6-22H1, 8-22H2, and 12-22H2 wells on October 9, 2019. However, Continental's visual surveillance showed no Wolla employee came to those locations on that day.

f. On October 17, 2019, Wolla Oilfield sent Continental two invoices for two hours of work its employees allegedly performed at the Salo 2-35H and 3-35H wells on October 10, 2019. However, Continental's visual surveillance showed no Wolla employee came to those locations on that day.

27. As described above, the fraudulent billings from certain days were moved to other days where no work occurred in order to prevent Continental from detecting Wolla Oilfield's excessive billing practices.

28. Wolla Oilfield's fraudulent conduct is not limited to the instances noted above. Wolla Oilfield's records indicate a pervasive practice of billing customers for more hours than its employees actually worked, failing to institute internal controls to eliminate these practices, and manipulating records to hide these practices.

29. Based on the information obtained during Continental's audit, Wolla Oilfield has systematically overbilled Continental for years. As a direct and proximate

result of Wolla Oilfield wrongful conduct, Continental has been significantly overcharged by at least $2.4 million from 2017-2019.

30. Upon information and belief, Wolla Oilfield is currently under investigation by the FBI for its fraudulent practices.

## COUNT I – BREACH OF CONTRACT

31. The allegations of paragraphs 1 through 30 are incorporated herein by reference.

32. Wolla Oilfield and Continental entered into the MSC on April 4, 2016.

33. The MSC is a valid and enforceable contract.

34. Under Section 15.1 of the MSC, Wolla Oilfield agreed to conduct its operations in accordance with all applicable laws, rules, regulation and decrees of any governmental or regulatory body having jurisdiction over it.  Among other things, Wolla Oilfield is required to comply with the Federal Motor Carrier Safety Regulations, which prohibit drivers from driving for more than 14 consecutive hours after coming on duty.

35. Under Section 15.1 of the MSC, Wolla Oilfield agreed all invoices, financial settlements, billings and reports rendered to Continental shall reflect properly the facts about all activities and transactions handled for the account of Continental and those documents may be relied upon as being complete and accurate.

36. Under Section 15.1 of the MSC, Wolla Oilfield agreed to promptly notify Continental upon discovery of any instance where Wolla failed to comply with the provisions of Section 15.1.

37. Wolla Oilfield breached the MSC by, among other things, submitting fraudulent invoices to Continental. These invoices vastly overstated the amount of hours Wolla Oilfield employees performed services for Continental, and the cost of materials used in performing those services. Wolla Oilfield engaged in a number of fraudulent practices to prevent Continental from detecting its wrongful conduct and these breaches, including but not limited to manipulating invoices and work tickets.

38. As a direct result of these breaches, Continental suffered significant damages to be proven at trial, but which Continental currently estimates exceed $2.4 million.

## COUNT II – OKLAHOMA CONSUMER PROTECTION ACT

39. The allegations of paragraphs 1 through 38 are incorporated herein by reference.

40. Wolla Oilfield engaged in a number of unlawful practices under the Oklahoma Consumer Protection Act, 15 O.S. § 751 et. seq., including but not limited to:

   a. making false and misleading statements of fact concerning the price of its goods and services, *see* 15 O.S. § 753(11);

   b. knowingly causing charges to be made to Continental through OpenInvoice that were not authorized by Continental, *see* 15 O.S. § 753(25); and

   c. engaging in deceptive trade practices, specifically misrepresenting the cost of its goods and the amount of time it provided services to

        Continental on its invoices, which deceived Continental to Continental's detriment, *see* 15 O.S. § 753(20).

41. Wolla Oilfield engaged in these unlawful practices in the course of its business.

42. Wolla Oilfield's unlawful practices caused Continental injury by deceiving Continental into overpaying Wolla Oilfield for the services it provided.

43. As a direct and proximate result of Wolla Oilfield's unlawful practices, Continental as a consumer suffered actual damages (*i.e.*, injury-in-fact) to be proven at trial, but which Continental currently estimates exceed $2.4 million.

## **PRAYER FOR RELIEF**

44. WHEREFORE, Continental requests that this Court enter judgment against Wolla Oilfield as follows:

    a. That Wolla Oilfield has breached the MSC, and violated the Oklahoma Consumer Protection Act;

    b. That Wolla Oilfield is liable to Continental for actual damages for its violations of law;

    c. That Wolla Oilfield is liable for costs and attorneys' fees for its violations of the Oklahoma Consumer Protection Act;

    d. That Wolla Oilfield are liable for pre-judgment and post-judgment interest and costs on all sums awarded;

    e. Any such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

45. Continental demands a trial by jury on all claims and issues so triable.

DATED:  May 4, 2020

>Respectfully submitted,
>
>*/s/ Nicholas "Nick" V. Merkley*
>Nicholas ("Nick") V. Merkley, OBA No. 20284
>GableGotwals
>One Leadership Square 15th Floor
>211 N. Robinson
>Oklahoma City, OK 73102
>Telephone:  405.568.3311
>Email:  nmerkley@gablelaw.com
>
>AND
>
>Hugh Q. Gottschalk
>Pawan Nelson
>Wheeler Trigg O'Donnell LLP
>370 Seventeenth Street, Suite 4500
>Denver, CO  80202
>Telephone:  303.244.1800
>Facsimile:  303.244.1879
>Email:     gottschalk@wtotrial.com
>           pnelson@wtotrial.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2020, I electronically transmitted the attached document to the Clerk of Court using the Electronic Filing System for filing.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

>*/s/ Nicholas "Nick" V. Merkley*
>Nicholas ("Nick") V. Merkley