**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CONTINENTAL RESOURCES, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 5:20-cv-00200-PRW** |
| | ) | |
| **WOLLA OILFIELD SERVICES, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

**DEFENDANT WOLLA OILFIELD SERVICES, LLC'S MOTION TO DISMISS**
**PURSUANT TO FRCP 12(b)(6) AND BRIEF IN SUPPORT**

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), Defendant Wolla Oilfield Services, LLC ("Wolla Oilfield") files this Motion to Dismiss and Brief in Support as follows:

## I.  INTRODUCTION

Continental alleges that Wolla Oilfield overbilled it for hot oil services provided at Continental's wells in North Dakota, and asserts two causes of action: (1) breach of contract, and (2) violation of the Oklahoma Consumer Protection Act. Both causes of action should be dismissed under Rule 12(b)(6).

First, Continental's conclusory allegations of breach fail the "plausibility" standard of *Iqbal*. Specifically, the five-year Master Service Contract (the "MSC," Dkt. No. 1-1) between the parties provides that Wolla Oilfield will perform services for

Continental pursuant to executed "Scope[s] of Work" in the form of Exhibit A thereto. The MSC itself does not set forth any specific Work to be performed by Wolla Oilfield, and likewise does not set forth any rate schedule or pricing. Because Continental does not allege any Scope of Work executed pursuant to the MSC (or the agreed cost of such Scope of Work), Continental's conclusory allegations of breach of the MSC by "overbilling" fail the plausibility standard and should be dismissed under Rule 12(b)(6).

Second, Continental's claim for violation of the Oklahoma Consumer Protection Act should also be dismissed because Continental is not an aggrieved "consumer" under the statute. A services contract between two corporate entities is beyond the scope of the Consumer Protection Act, as held in *Sooner Hot Oil & Well Services, LLC v. Bison Clean Fuels, LLC*, CIV-14-0479-HE, 2014 WL 6455521, at *1 (W.D. Okla. Nov. 13, 2014) (dismissing Oklahoma Consumer Protection Act claim under Rule 12(b)(6)). Further, the Oklahoma Consumer Protection Act does not apply to transactions outside of Oklahoma, and all services here were provided in North Dakota.

## II.     FACTUAL BACKGROUND

1.      On April 4, 2016, Continental and Wolla Oilfield entered the overarching Master Service Contract. Am. Complaint (Dkt. No. 11), ¶ 8; MSC (Dkt. No. 1-1) at 1.

2.      While the MSC generally governs the parties' relationship, the MSC itself does not obligate Wolla Oilfield to perform any specific services. Instead, MSC Section 1.1 provides that specific services will, from time to time, be agreed to as "Scopes of Work" in form attached as Exhibit A to the MSC:

> Continental shall be entitled, at any time during the term of this Contract, to request Contractor to provide [Hot Oil Trucks, Super Vac Trucks, Tankers] (collectively, "Work"), ***as more specifically defined in the attached "Exhibit A - Scope of Work" and made a part hereof ("Scope of Work")***. It is agreed and understood that Continental is not obligated to request Work hereunder, ***and Contractor is not obligated to accept Work hereunder***; . . . .

MSC, § 1.1 (emphasis added).

3.      In turn, Exhibit A to the MSC is the form on which Work is to be requested and accepted.   MSC, Exhibit A – "Scope of Work" (Dkt. No. 1-1 at 15) ("4.0 – Description of Goods & Services").

4.      Regarding payment, the MSC provides that:

> Continental will pay Contractor for Work performed ***in accordance with the terms of the applicable Oildex work ticket as approved pursuant to Paragraph 1 and Exhibit A of this Contract***. The price for the Work as approved by Continental shall be Contractor's full compensation for all costs whatsoever for complete performance of the Work and for compliance with all terms and conditions of this Contract.

MSC, § 9.1 (emphasis added).  Thus, Continental agreed that it would pay Wolla Oilfield for services under the terms agreed to in a Scope of Work.

5.      On May 4, 2020, Continental filed its Amended Complaint, alleging breach of the MSC and violation of the Oklahoma Consumer Protection Act against Wolla Oilfield, based on the general theory that Wolla Oilfield overbilled Continental for services Wolla Oilfield performed in North Dakota.

6.     Continental attached a copy of the MSC to its Original Complaint (Dkt. No. 1-1), but makes no allegations regarding any Scope of Work executed pursuant to the terms of the MSC.

7.     Instead, Continental makes the sole conclusory allegation that "[u]nder the MSC, Wolla Oilfield agreed to charge Continental an hourly rate for the hot oil services provided to Continental (*see* Rate Sheet, attached hereto as Exhibit 2)."  Am. Complaint, ¶ 10 [However, the Rate Sheet was not attached to the Amended Complaint but was attached to the original Complaint, *see* Doc. No. 1-2].

8.     However, as discussed above, no hourly rates are mentioned in the MSC, and the "Rate Sheet" referenced by Continental in paragraph 10 is neither mentioned in the MSC nor attached to the MSC as an exhibit.

9.     Continental makes no allegations as to where the "Rate Sheet" came from, or what Scope of Work to which it allegedly applies.

10.     Continental also makes the sole conclusory allegation that "the parties agreed propane would be charged to Continental at cost as a pass-through item," and that Wolla Oilfield "excessively marked up the cost of propane." *Id.*, ¶ 23.

11.     However, again, Continental identifies no provision of the MSC to support this allegation, and identifies no provision of any executed Scope of Work that would support this allegation.

12.     In its second cause of action, Continental alleges that Wolla Oilfield engaged in unlawful practices under the Oklahoma Consumer Protection Act. *Id.*, ¶¶ 39-43.

13.     Specifically, Continental alleges that Wolla Oilfield (1) "ma[de] false and misleading statements of fact concerning the price of its goods and services"; (2) "knowingly caus[ed] charges to be made to Continental through OpenInvoice that were not authorized"; and (3) "misrepresent[ed] the cost of its goods and the amount of time it provided services to Continental on its invoices." *Id.*, ⁋ 40.

### III.     ARGUMENT AND AUTHORITIES

The federal pleading standard applicable to Rule 12(b)(6) motions is well known:

> "To survive a motion to dismiss, a complaint must contain sufficient ***factual matter***, accepted as true, to 'state a claim for relief that is ***plausible*** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 [] (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [] (2007)). . . . "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is ***inapplicable to legal conclusions***. Threadbare recitals of the elements of a cause of action, supported by ***mere conclusory statements***, ***do not suffice***." *Iqbal*, 129 S.Ct. at 1949.

*Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (emphasis added).  Thus, the key inquiry under Rule 12(b)(6) is whether Plaintiff has pled sufficient factual matter to take his claim "across the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 680.

Continental asserts two claims: (1) breach of the MSC (Am. Complaint, ⁋⁋ 31-38), and (2) violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751, *et seq.* (*id.* at ⁋⁋ 39-43).   As discussed below, both claims should be dismissed pursuant to Rule 12(b)(6).

### a. Continental fails to allege the terms of a Scope of Work or how such terms were breached.

To state a claim for breach of contract, a plaintiff must prove: (1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of the breach. *Cates v. Integris Health, Inc.,* 412 P.3d 98, 103 (Okla. 2018).  Here, Wolla Oilfield does not dispute that it entered into the MSC.  However, Continental fails to allege sufficient factual matter to plausibly support the second element—that Wolla Oilfield breached the terms of the MSC.

As stated above, the MSC does not set forth any specific work to be completed or any pricing regarding such work.  Instead, the MSC provides that the parties may agree to Scopes of Work (in the form of Exhibit A to the MSC).  Because Continental fails to identify specific Scope of Work executed pursuant to the MSC or what the terms of such agreement were, Continental fails to allege sufficient factual matter to support its allegation that Wolla Oilfield breached the MSC.

#### 1. "Overstated" amount of hours

Continental alleges that "Wolla Oilfield breached the MSC by, among other things, submitting fraudulent invoices to Continental [that] vastly overstated the amount of hours Wolla Oilfield employees performed services for Continental . . . ." *Id.*, ¶ 37.  However, in order for "the amount of hours" to be relevant to its claim for breach of the MSC, Continental must identify an agreement to pricing (via a Scope of Work) that was breached. Continental makes only *one* conclusory allegation regarding an agreement on pricing:  that "[u]nder the MSC, Wolla Oilfield agreed to charge Continental an hourly

rate for the hot oil services provided to Continental (*see* Rate Sheet, attached hereto as Exhibit 2)."  Am. Complaint, ¶ 10 [*see* Doc. No. 1-2].

Continental does not allege sufficient *factual* matter to plausibly support this conclusory allegation of breach of the MSC.  Specifically, Continental does not identify *any provision of the MSC* by which "Wolla Oilfield agreed to charge Continental an hourly rate for the hot oil services provided to Continental."   Am. Complaint, ¶ 10. Instead, Continental's sole attempt to allege factual matter to support this conclusory allegation of breach of the MSC is three words in Paragraph 10:  "*see* Rate Sheet."  *Id.* But Continental makes no factual allegations regarding the Rate Sheet at all: what it is, where it came from, or how it relates to the MSC. *Erikson v. BP Explor. & Prod. Inc.,* 567 Fed. App'x 637, 639 (10th Cir. 2014) ("The. . . complaint is devoid of any factual allegations to demonstrate any agreement between [plaintiff] and [defendant] or sufficient facts from which any agreement could be inferred. And because there was no contract, there can be no breach.").

Given the terms of the MSC that work and pricing will be agreed to in later Scopes of Work, Continental's failure to allege any Scope of Work or its terms is fatal to its claim for breach of the MSC.  Continental's pleading is exactly the type of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that "do not suffice." *Iqbal*, 556 U.S. at 678.

    2.  "Overstated" cost of materials in performing the services

Similarly, Continental alleges "Wolla Oilfield breached the MSC by, among other things, submitting fraudulent invoices to Continental [that] vastly overstated . . . the cost

of materials used in performing those services."). Am. Complaint, ¶ 37. But again, Continental must identify an agreement to pricing (via a Scope of Work) that was breached. Regarding the cost of materials, Continental makes *one* conclusory allegation that "the parties agreed propane would be charged to Continental at cost as a pass through item." *Id.*, ¶ 23.

Continental does not allege sufficient *factual* matter to support this conclusory allegation of breach of the MSC. Continental does not identify any provision of the MSC by which "the parties agreed propane would be charged to Continental at cost as a pass through item." Am. Complaint, ¶ 23; *Duckett v. Okla. ex rel. Bd. of Regents of Univ. of Okla.,* 986 F. Supp. 2d 1249, 1258-59 (W.D. Okla. 2013) (finding that plaintiff failed to state a claim for breach where he did not identify any specific provision of the contract that was not performed). And Continental makes no factual allegations regarding the "cost of materials" whatsoever: what the cost was, what was charged, or when. Again, this one conclusory allegation that Wolla Oilfield breached the MSC regarding the cost of materials is insufficient to state a claim for breach of contract under *Iqbal/Twombly*.

Accordingly, Continental's claim for breach of contract should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

### b. As a matter of law, the Oklahoma Consumer Protection Act does not apply.

Continental's claim under the Oklahoma Consumer Protection Act (the "OCPA") fails as a matter of law for two reasons: (1) Continental is not a consumer entitled to its protection, and (2) the OCPA does not apply extra-territorially and the alleged conduct occurred in North Dakota.

1.  Continental is not a "consumer" entitled to sue under the OCPA.

First, the OCPA does not apply to services contracts like the Master Services Contract at issue here. The OCPA provides protection only to aggrieved "consumers." OKLA. STAT. TIT. 15 § 761.1(A) (2020); *Lumber 2, Inc. v. Ill. Tool Works, Inc.,* 261 P.3d 1143, 1146 (Okla. 2011) ("As the title provides, the subject of the Act is **consumer** protection.") (emphasis in original).  The Oklahoma Supreme Court has defined "consumer" as used in the OCPA to mean "one who consumes or uses economic goods." *Lumber 2, Inc.,* 261 P.3d at 1149 ("Thus, under the plain and ordinary meaning of "consumer," i.e., one who consumes or uses economic goods, Lumber 2 has no claim under the OCPA.").

Based upon this definition of "consumer," the Oklahoma Supreme Court accordingly interpreted the OCPA to exclude contracts that are "nothing more than service contracts." *James v. Tyson Foods, Inc.,* 292 P.3d 10, 18 (Okla. 2012) ("The contracts entered into between the poultry growers and Tyson were nothing more than service contracts, in which the growers contracted to raise birds to maturity. Therefore, we hold that the contract growers are not 'aggrieved consumers' entitled to the protections of the Oklahoma Consumer Protection Act.").

Indeed, the principle that the OCPA does not apply to service contracts due to the meaning of "consumer" was applied by the Western District of Oklahoma to dismiss an OCPA claim regarding a service contract to transport compressed natural gas to northwest Oklahoma:

> With respect to the purported counterclaim under the OCPA, plaintiffs dispute whether defendant is a "consumer" entitled to assert the Act's protections. Defendant acknowledges that it did not buy goods for its own use, which would likely qualify it for "consumer" status. *See Lumber 2, Inc. v. Illinois Tool Works, Inc,* 261 P.3d 1143, 1149 (Okla.2011) (defining "consumer" as "one who consumes or uses economic goods"). Rather, it argues that it is a consumer because it purchased "services," which fall within the scope of the OCPA. However, the Oklahoma Supreme Court has interpreted the Act to exclude those contracts which are "nothing more than service contracts." *James v. Tyson Foods, Inc.*, 292 P.3d 10, 18 (Okla.2012). Here, the contract at issue is essentially one for services—for the delivery of CNG. Defendant therefore fails to qualify as an aggrieved "consumer" under the Act, and its purported claim under the OCPA fails to state a claim.

*Sooner Hot Oil & Well Servs.*, 2014 WL 6455521, at *1.

Here, the same analysis applies and Continental's OCPA claim must be dismissed. It is undisputed that the contract at issue ("the Master Services Contract") is for services. *See* Am. Complaint, ¶ 8 ("Pursuant to the MSC, Wolla Oilfield agreed to provide hot oil services for Continental's oil wells in North Dakota."). Continental makes no allegations that would render it "one who consumes or uses economic goods."   Even the meager allegation regarding cost of propane relates to propane *used by Wolla Oilfield* in providing services under the MSC.  Accordingly, pursuant to *Lumber 2, Inc.*, *James*, and *Sooner Hot Oil & Well Services, LLC*, Continental is not a "consumer" under the OCPA, and its claim for violation of the OCPA regarding the Master Services Contract fails as a matter of law.

2.  <u>The OCPA does not apply to transactions outside of Oklahoma.</u>

Second, even if the Master Services Contract somehow rendered Continental "one who consumes or uses economic goods" under the OCPA (it does not), the OCPA does not apply to acts that occurred outside of Oklahoma.

In *Steinbeck v. Dollar Thrifty Automobile Group, Inc.*, the Court explained:

> The Oklahoma Supreme Court has determined that the appropriate inquiry in deciding the applicability of a consumer protection statute is ***whether the consumer transaction occurred within the state***. *Harvell v. Goodyear Tire and Rubber Co.*, 164 P.3d 1028, 1037 (Okla.2006). . . . Accordingly, although the OCPA is silent with respect to reach of the statute, it is reasonable to conclude that the Oklahoma Supreme Court's reasoning in *Harvell* applies to the OCPA. . . .
>
>  . . . Even assuming that DTAG collected revenue from the Fee in its Oklahoma headquarters and mandated that branches in other states charge the Fee without exception, ***the rental agreement was entered into in Arizona and any allegedly deceptive acts occurred there***. The OCPA does not apply here, and accordingly, plaintiff has not stated a claim for relief pursuant to the OCPA.

No. 08-CV-0378-CVE-PJC, 2008 WL 4279798, at *3-4 (N.D. Okla. Sept. 15, 2008) (emphasis added); *see Sallee v. Dollar Thrifty Automotive Grp., Inc.,* No. 14-CV-250-GKF-PJC, 2015 WL 1281518, at *8 (N.D. Okla. Mar. 20, 2015) ("Indeed, this court has held that the OCPA does not have extraterritorial effect.").[1]

---

[1] Extraterritorial application of a state statute may also implicate the Commerce Clause.  *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) ("the Commerce Clause precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State"); *KT. & G Corp v. Attorney Gen. of State of Okla.*, 535 F.3d 1114, 1143 (10th Cir. 2008) (state statute may violate the dormant Commerce Clause "if it has the practical effect of

Under the same analysis, Continental fails to state a claim for violation of the OCPA against Wolla Oilfield.  Continental does not allege where the MSC was entered into (because it was North Dakota), nor does Continental allege *any* deceptive acts—or any acts at all—by Wolla Oilfied in Oklahoma.  Instead, with respect to the key inquiry identified in *Harvell* and *Steinbeck* of "whether the consumer transaction occurred within the state," Continental's allegations make clear that the transaction(s) occurred ***in North Dakota***.  Am. Complaint, ¶ 8 ("Pursuant to the MSC, Wolla Oilfield agreed to provide hot oil services for Continental's oil wells in North Dakota."); *Kahn v. Davis,* No. 10-cv-01715-PAB-KMT, 2011 WL 4102328, at *2 (D. Colo. Sept. 14, 2011) ("[W]hen misrepresentations are the underlying events of a litigation, courts generally look to the place where the misrepresentations were made, not the place where they were received or relied upon to determine where the underlying events occurred."); *see also Yarbrough v. Elmber Bunker & Associates,* 669 F.2d 614, 617 (10th Cir. 1982) (rejecting an argument that the defendant's acts occurred in the state where plaintiff perceived the misrepresentations).

Because Continental admits that the transaction occurred in North Dakota and fails to allege any deceptive acts committed by Wolla Oilfield in Oklahoma, the OCPA does not apply and Continental fails to allege a claim under the OCPA that is plausible on its face.  Therefore, Continental's OCPA claim should be dismissed under Rule 12(b)(6).

---

extraterritorial control of commerce occurring entirely outside the boundaries of the state in question").

## IV.   CONCLUSION

For the foregoing reasons, Defendant Wolla Oilfield respectfully requests that the

Court dismiss Plaintiff's claims for breach of contract and violation of the Oklahoma

Consumer Protection Act pursuant to Rule 12(b)(6).

Respectfully Submitted,


*/s/ Daniel G. Webber, Jr.*
Daniel G. Webber, Jr., OBA No. 16332
Chance L. Pearson, OBA No. 22269
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK 73104
Telephone:   (405) 239-6040
Facsimile:   (405) 239-6766
Emails:        dwebber@ryanwhaley.com
                  cpearson@ryanwhaley.com

-and-

John T. Gerhart, Jr. (*pro hac vice*)
Texas Bar No. 00784122
jgerhart@HuntonAK.com
Grayson L. Linyard (*pro hac vice*)
Texas Bar No. 24070150
glinyard@HuntonAK.com
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
(214) 979-3000
(214) 740-7110 (Fax)

**ATTORNEYS FOR DEFENDANT**
**WOLLA OILFIELD SERVICES, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2020, I electronically transmitted the attached document to the Clerk of Court using the Electronic Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

*/s/ Daniel G. Webber, Jr.*
Daniel G. Webber, Jr.
