## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CONTINENTAL RESOURCES, INC.

      **Plaintiff,**

**v.**

WOLLA OILFIELD SERVICES, LLC

      **Defendant.**

**Case No. 5:20-cv-00200-PRW**

---

**DEFENDANT WOLLA OILFIELD SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT**

---

Respectfully Submitted,

| | |
|---|---|
| Daniel G. Webber, Jr. | John T. Gerhart, Jr. (*pro hac vice*) |
| OBA No. 16332 | Texas Bar No. 00784122 |
| Chance L. Pearson | jgerhart@HuntonAK.com |
| OBA No. 22269 | Grayson L. Linyard (*pro hac vice*) |
| RYAN WHALEY | Texas Bar No. 24070150 |
| 400 North Walnut Avenue | glinyard@HuntonAK.com |
| Oklahoma City, OK 73104 | HUNTON ANDREWS KURTH LLP |
| Telephone:  (405) 239-6040 | 1445 Ross Avenue, Suite 3700 |
| Facsimile:  (405) 239-6766 | Dallas, Texas 75202-2799 |
| dwebber@ryanwhaley.com | (214) 979-3000 |
| cpearson@ryanwhaley.com | (214) 740-7110 (Fax) |

**ATTORNEYS FOR DEFENDANT WOLLA OILFIELD SERVICES, LLC**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................ 3

III. ARGUMENT AND AUTHORITIES ................................................................ 6

A.  Continental fails to state a claim for breach of the MSC because it fails to allege the terms of a Scope of Work or how such terms were breached ................................................................................................... 7

1.  "Overstated" hours. ............................................................................ 7

2.  "Overstated" cost of materials in performing the services. .............. 8

B.  As a matter of law, the Oklahoma Consumer Protection Act does not apply here. ................................................................................................. 9

1.  Continental is not a "consumer" entitled to sue under the OCPA. ...................................................................................... 10

2.  The OCPA does not apply to transactions outside of Oklahoma. .................................................................................. 12

C.  Continental fails to state a claim for fraud under Rule 9(b). ..................... 14

1.  Continental fails to state a claim for fraud as a matter of law because it relies on the exact same conduct to assert its breach of contract claim. ............................................................................. 14

2.  Continental does not satisfy Rule 9(b)'s heightened pleading requirements. ..................................................................................... 16

a.  Continental fails to identify any allegedly fraudulent invoices (i.e., false statements) outside of a three-week period—from September 28, 2019 to October 17, 2019— to support its purported three-year fraud claim. ..................... 16

b.  Continental fails to allege facts supporting a material misrepresentation under Rule 9(b). ....................................... 18

c.  With respect to the invoices identified in the three-week period, Continental fails to allege facts supporting detrimental reliance under Rule 9(b). ................................... 20

D.  Continental fails to state a claim for constructive fraud. ........................... 21

1.  Continental's constructive fraud claim should likewise be dismissed because it, too, relies on the exact same conduct as Continental's breach of contract claim. ........................................... 21

i

2.     Continental also fails to plead facts supporting the existence of a "duty". ............................................................................... 21

3.     Continental fails to plead facts supporting a material misrepresentation under Rule 9(b). ..................................................... 23

4.     Continental fails to plead facts supporting detrimental reliance under Rule 9(b). .................................................................. 23

**E.**     Continental fails state a claim for unjust enrichment. ................................. 24

**IV.**     CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................. passim

*Bixler v. Foster,*
596 F.3d 751 (10th Cir. 2010) ...................................................... 6

*Bristow First Assembly of God v. BP p.l.c.,*
210 F. Supp. 3d 1284 (N.D. Okla. 2016) .................................. 14

*Cantwell v. De La Garza,*
CV-18-272-D, 2018 WL 5929638 (W.D. Okla. Nov. 13, 2018) ................................. 22

*Cates v. Integris Health, Inc.,*
412 P.3d 98 (Okla. 2018) ............................................................. 7

*Chieftain Royalty Co. v. Dominion Oklahoma Texas Expl. & Prod., Inc.,*
CIV-11-344-R, 2011 WL 9527717 (W.D. Okla. July 14, 2011) ........................... 21, 23

*Conrad v. Phone Directories Co., Inc.,*
585 F.3d 1376 (10th Cir. 2009) .................................................. 21-22

*Conrad v. Phone Directories LP,*
CV-07-859-R, 2007 WL 9717770 (W.D. Okla. Nov. 6, 2007), appeal
dismissed and remanded ............................................................. 22

*Cty. Line Inv. Co. v. Tinney,*
933 F.2d 1508 (10th Cir.1991) .................................................. 24

*Duckett v. Okla. ex rel. Bd. of Regents of Univ. of Okla.,*
986 F. Supp. 2d 1249 (W.D. Okla. 2013) .................................. 9

*Goode v. Nuance Communications, Inc.,*
No. 17-CV-00472-GKF-JFJ, 2018 WL 3371091 (N.D. Okla. July 10,
2018) .............................................................................. 14, 15, 16, 21

*Harvell v. Goodyear Tire and Rubber Co.,*
164 P.3d 1028 (Okla. 2006) ....................................................... 13

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989) ................................................................................... 12

*Horton v. Bank of Am., N.A.*,
    189 F. Supp. 3d 1286 (N.D. Okla. 2016) ........................................ 14, 15, 21

*Howell v. Texaco Inc.*,
    112 P.3d 1154 (Okla. 2004) ............................................................... 20, 21

*I.P.I.C., GSP, S.L. v. Ruhrpumpen, Inc.*,
    08-CV-0510-CVEPJC, 2008 WL 5122697 (N.D. Okla. Dec. 4, 2008) ...................... 25

*James v. Tyson Foods, Inc.*,
    292 P.3d 10 (Okla. 2012) .................................................................. 10, 11

*Jonnada v. Liberty Ins. Corp.*,
    CIV-19-456-D, 2019 WL 6119233 (W.D. Okla. Nov. 18, 2019) ............................. 14

*Kahn v. Davis*,
    No. 10-cv-01715-PAB-KMT, 2011 WL 4102328 (D. Colo. Sept. 14,
    2011) ......................................................................................... 13

*Koch v. Koch Indus., Inc.*,
    203 F.3d 1202 (10th Cir. 2000) ................................................................ 14

*KT. & G Corp v. Attorney Gen. of State of Okla.*,
    535 F.3d 1114 (10th Cir. 2008) ................................................................ 12

*Kunneman Properties, LLC v. Marathon Oil Co.*,
    17-CV-00456-GKF-JFJ, 2019 WL 4658362 (N.D. Okla. Sept. 24, 2019) ................. 20

*Lee v. Enter. Fin. Group*,
    CIV-08-1221-M, 2009 WL 1362605 (W.D. Okla. May 14, 2009) ........................... 24

*Lumber 2, Inc. v. Ill. Tool Works, Inc.*,
    261 P.3d 1143 (Okla. 2011) ............................................................... 10, 11

*McGregor v. Nat'l Steak Processors, Inc.*,
    No. 11-CV-0570-CVE-TLW (2012 WL 314059 (N.D. Okla. Feb. 1,
    2012) ......................................................................................... 14

*Roberts Ranch Co. v. Exxon Corp.*,
    43 F. Supp. 2d 1252 (W.D. Okla. 1997) ...................................................... 22

*Sallee v. Dollar Thrifty Automotive Grp., Inc.*,
    No. 14-CV-250-GKF-PJC, 2015 WL 1281518 (N.D. Okla. Mar. 20,
    2015) ................................................................................................ 12

*Sooner Hot Oil & Well Services, LLC v. Bison Clean Fuels, LLC*,
    CIV-14-0479-HE, 2014 WL 6455521 (W.D. Okla. Nov. 13, 2014)
    (dismissing Oklahoma Consumer Protection Act claim under Rule
    12(b)(6)) ....................................................................................... 2, 11

*State ex rel. Southwestern Bell Tel. Co. v. Brown*,
    CIV-19-456-D, 2019 WL 6119233 (W.D. Okla. Nov. 18, 2019) .............................. 14

*Steinbeck v. Dollar Thrifty Automobile Group, Inc.*,
    No. 08-CV-0378-CVE-PJC, 2008 WL 4279798 (N.D. Okla. Sept. 15,
    2008) ............................................................................................. 12, 13

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) ........................................................................ 7

*Torrone v. Safeco Ins. Co. of Am.*,
    17-CV-0534-CVE-FHM, 2018 WL 327769 (N.D. Okla. Jan. 8, 2018) .............. 21, 23

*U.S. ex rel. Dillahunty v. Chromalloy Oklahoma*,
    CIV-08-944-L, 2009 WL 3837294 (W.D. Okla. Nov. 16, 2009).............................. 17

*U.S. ex rel. Lacy v. New Horizons, Inc.*,
    CIV-07-0137-HE, 2008 WL 4415648 (W.D. Okla. Sept. 25, 2008),
    *aff'd*, 348 Fed. Appx. 421 (10th Cir. 2009) ........................................... 17, 20

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
    472 F.3d 702 (10th Cir. 2006), *abrogated on other grounds by Cochise
    Consultancy, Inc. v. United States ex rel. Hunt*, 139 S.Ct. 1507 (2019) ................. 6, 7

*Yarbrough v. Elmber Bunker & Associates*,
    669 F.2d 614 (10th Cir. 1982) ...................................................................... 13

**RULES**

FED. R. CIV. P. 8 .......................................................................................... 1, 18

FED. R. CIV. P. 9(b)........................................................................................*passim*

FED. R. CIV. P. 12(b)(6)........................................................................ 1, 2, 6, 13, 25

**STATUTES**

OKLA. STAT. TIT. 15 § 751 ................................................................................. 6

OKLA. STAT. TIT. 15 § 761.1(A) ..................................................................... 9-12

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), Defendant Wolla Oilfield Services, LLC ("Wolla") files this Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support as follows:

## I.     <u>INTRODUCTION</u>

Knowing that it failed to state a civil RICO claim in its Original Complaint, Plaintiff filed a First Amended Complaint which dropped that claim. Now, after realizing that its First Amended Complaint also failed to state a claim for breach of contract or violation of the Oklahoma Consumer Protection Act, Continental has filed a Second Amended Complaint ("SAC") adding claims for fraud, constructive fraud, and unjust enrichment. Despite this third bite at the apple, Continental still fails to plead sufficient facts to state any claim against Wolla.

First, Continental's conclusory allegations of breach of contract fail the "plausibility" standard of *Iqbal*. Specifically, the five-year Master Service Contract (the "MSC," Dkt. No. 25-1) between the parties provides that Wolla will perform services for Continental pursuant to executed "Scope[s] of Work" in the form of Exhibit A thereto. The MSC itself does not set forth any specific Work to be performed by Wolla, and likewise does not set forth any rate schedule or pricing (e.g., on either a per-hour basis or per-well basis). Rather, the MSC unequivocally provides that scopes of work and pricing may be agreed to *later*, in the specified form of a Scope of Work. Because Continental does not allege any Scope of Work executed pursuant to the MSC (or the agreed pricing of such Scope of Work), Continental fails to allege any provision of the MSC that has

been breached. Continental's conclusory allegations of breach of the MSC by "overbilling" fail the plausibility standard and should be dismissed under Rule 12(b)(6).

Second, Continental's claim for violation of the Oklahoma Consumer Protection Act should also be dismissed because Continental is not an aggrieved "consumer" under the statute. A services contract between two corporate entities is beyond the scope of the Consumer Protection Act, as held in *Sooner Hot Oil & Well Services, LLC v. Bison Clean Fuels, LLC*, CIV-14-0479-HE, 2014 WL 6455521, at *1 (W.D. Okla. Nov. 13, 2014) (dismissing Oklahoma Consumer Protection Act claim under Rule 12(b)(6)). Further, the Oklahoma Consumer Protection Act does not apply to transactions outside of Oklahoma, and all services here were provided in North Dakota.

Continental's new claims for fraud, constructive fraud, and unjust enrichment fare no better. Continental's claim for fraud should be dismissed as a matter of law because it relies on the exact same facts as its breach of contract claim. Further, Continental fails to plead facts with the requisite particularity under Rule 9(b). Though Continental purports to assert a claim for fraud covering three years (2017-2019) and totaling $2.4 million in damages, it fails to identify any allegedly fraudulent invoices outside of a *three week* period from September 28, 2019 to October 17, 2019. And Continental does not (and cannot) allege that it paid those invoices. Therefore, beyond its conclusory statements and bare recitation of elements, Continental fails to allege a material misrepresentation and, for the few invoices it does identify, it has not alleged facts to support detrimental reliance, both necessary elements to a fraud claim.

Continental's claim for constructive fraud must likewise be dismissed for the same reasons as its fraud claim, as well as because Continental does not allege facts sufficient to plausibly establish the "duty" element of a constructive fraud claim.

Finally, Continental's unjust enrichment claim must be dismissed because it is based upon a single conclusory sentence, and is unsupported by any factual allegations.

## II.    FACTUAL BACKGROUND

1.    On April 4, 2016, Continental and Wolla entered the overarching Master Service Contract. SAC (Dkt. No. 25), ¶ 8; MSC (Dkt. No. 25-1) at 1.

2.    While the MSC generally governs the parties' relationship, the MSC itself does not obligate Wolla to perform any specific services. Instead, MSC Section 1.1 provides that specific services will, from time to time, be agreed to as "Scopes of Work" in form attached as Exhibit A to the MSC:

> Continental shall be entitled, at any time during the term of this Contract, to request Contractor to provide [Hot Oil Trucks, Super Vac Trucks, Tankers] (collectively, "Work"), *as more specifically defined in the attached "Exhibit A - Scope of Work" and made a part hereof ("Scope of Work")*. It is agreed and understood that Continental is not obligated to request Work hereunder, *and Contractor is not obligated to accept Work hereunder*; . . . .

MSC, § 1.1 (emphasis added).

3.    In turn, Exhibit A to the MSC is the form on which Work is to be requested and accepted. MSC, Exhibit A – "Scope of Work" (Dkt. No. 25-1 at 15) ("4.0 – Description of Goods & Services").

4.    Regarding payment, the MSC provides that:

> Continental will pay Contractor for Work performed ***in
> accordance with the terms of the applicable Oildex work
> ticket as approved pursuant to Paragraph 1 and Exhibit A
> of this Contract***. The price for the Work as approved by
> Continental shall be Contractor's full compensation for all
> costs whatsoever for complete performance of the Work and
> for compliance with all terms and conditions of this Contract.

MSC, § 9.1 (emphasis added). Thus, Continental agreed that it would pay Wolla for services under the terms agreed to in a Scope of Work.

5. On August 25, 2020, Continental filed its Second Amended Complaint, alleging breach of the MSC, violation of the Oklahoma Consumer Protection Act, actual fraud, constructive fraud, and unjust enrichment all based on the general theory that Wolla overbilled Continental for services Wolla performed in North Dakota.

6. Continental attached a copy of the MSC to its Second Amended Complaint (Dkt. No. 25-1), but makes no allegations regarding any Scope of Work executed pursuant to the terms of the MSC.

7. Instead, Continental makes the sole conclusory allegation that "[u]nder the MSC, Wolla Oilfield agreed to charge Continental an hourly rate for the hot oil services provided to Continental (*see* Rate Sheet, attached hereto as Exhibit 2)." SAC ¶ 10.

8. However, as discussed above, no agreement to pricing is mentioned in the MSC, and the "Rate Sheet" referenced by Continental in paragraph 10 is neither mentioned in the MSC nor attached to the MSC as an exhibit. Further, Continental has not alleged any facts showing that the parties entered into a subsequent agreement for certain services at an hourly rate that amended or modified the MSC.

9. Continental makes no allegations as to where the "Rate Sheet" came from, the applicable time frame for such rates, or what Scope of Work those rates allegedly applies.

10. Continental also makes the sole conclusory allegation that "the parties agreed propane would be charged to Continental at cost as a pass-through item," and that Wolla "excessively marked up the cost of propane." *Id.* ¶ 23.

11. However, again, Continental identifies no provision of the MSC or other facts to support this conclusory statement.

12. In its second cause of action, Continental alleges that Wolla engaged in unlawful practices under the Oklahoma Consumer Protection Act. *Id.* ¶¶ 39-43.

13. Specifically, Continental alleges that Wolla (1) "ma[de] false and misleading statements of fact concerning the price of its goods and services"; (2) "knowingly caus[ed] charges to be made to Continental through OpenInvoice that were not authorized"; and (3) "misrepresent[ed] the cost of its goods and the amount of time it provided services to Continental on its invoices." *Id.* ¶ 40.

14. Further, Continental asserts two causes of action for fraud—actual and constructive—by relying on the exact same facts it does to assert its claim for breach of contract. *Id.* ¶¶ 44-55.

15. Finally, Continental seeks to recover under a theory of unjust enrichment. *Id.* ¶¶ 56-61.

## III.   ARGUMENT AND AUTHORITIES

The federal pleading standard applicable to Rule 12(b)(6) motions is well known:

> "To survive a motion to dismiss, a complaint must contain sufficient *factual matter*, accepted as true, to 'state a claim for relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 [] (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [] (2007)). . . . "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by *mere conclusory statements*, *do not suffice*." *Iqbal*, 129 S.Ct. at 1949.

*Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (emphasis added).  Thus, the key inquiry under Rule 12(b)(6) is whether plaintiff has pled sufficient factual matter to take his claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.   All five of Continental's claims: (1) breach of the MSC (SAC ¶¶ 31-38), (2) violation of the Oklahoma Consumer Protection Act, 15 O.S. § 751, *et seq.* (*id.* ¶¶ 39-43), (3) actual fraud (*id.* ¶¶ 44-49), (4) constructive fraud (*id.* ¶¶ 50-55), and (5) unjust enrichment (*id.* ¶¶ 56-61) should be dismissed pursuant to Rule 12(b)(6) for the reasons set forth below.

Moreover, when the plaintiff alleges conduct sounding in fraud, Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Specifically, "a plaintiff [must] set forth the 'who, what, when, where, and how' of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-727 (10th Cir. 2006) (internal quotations omitted), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States ex rel. Hunt*,

139 S.Ct. 1507 (2019); *see Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). Both of Continental's fraud claims—actual and constructive—fail to meet Rule 9(b)'s heightened pleading requirements as discussed herein.

A.   **Continental fails to state a claim for breach of the MSC because it fails to allege the terms of a Scope of Work or how such terms were breached.**

To state a claim for breach of contract, a plaintiff must show: (1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of the breach. *Cates v. Integris Health, Inc.,* 412 P.3d 98, 103 (Okla. 2018). Here, Wolla does not dispute that it entered into the MSC. However, Continental fails to allege sufficient factual matter to plausibly support the second element—that Wolla breached the terms of the MSC.

As stated above, the MSC does not set forth any specific work to be completed or any pricing regarding such work. Instead, the MSC provides that the parties may agree to Scopes of Work (in the form of Exhibit A to the MSC). Because Continental fails to identify a specific Scope of Work executed pursuant to the MSC, or what the terms of such agreement were, Continental fails to allege sufficient factual matter to support its allegation that Wolla breached the MSC.

1.   "Overstated" hours.

Continental alleges that "Wolla Oilfield breached the MSC by, among other things, submitting fraudulent invoices to Continental [that] vastly overstated the amount of hours Wolla Oilfield employees performed services for Continental . . . ." SAC ¶ 37. However, in order for "the amount of hours" to be relevant to its claim for breach of the MSC, Continental must identify an agreement to services and pricing (via a Scope of

Work) under the MSC that was breached. Continental makes no allegations whatsoever as to what services Wolla allegedly agreed to perform via Scope of Work. And Continental makes only *one* conclusory allegation regarding an agreement on pricing: that "[u]nder the MSC, Wolla Oilfield agreed to charge Continental an hourly rate for the hot oil services provided to Continental (*see* Rate Sheet, attached hereto as Exhibit 2)." *Id.* ¶ 10.

Continental does not allege sufficient *factual* matter to plausibly support its conclusory allegation of breach of the MSC. Specifically, Continental does not identify *any provision of the MSC* by which "Wolla Oilfield agreed to charge Continental an hourly rate for the hot oil services provided to Continental." *Id.* Instead, Continental's sole attempt to allege factual matter to support this conclusory allegation of breach of the MSC is three words in Paragraph 10: "*see* Rate Sheet." *Id.* But Continental makes no factual allegations regarding the Rate Sheet at all: what it is, where it came from, when it was dated, what work it relates to, or how it relates to the MSC at all.

Given the terms of the MSC that work and pricing will be agreed to in later Scopes of Work, Continental's failure to allege any Scope of Work or its terms is fatal to its claim for breach of the MSC. Continental's pleading is exactly the type of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that "do not suffice." *Iqbal*, 556 U.S. at 678.

### 2. "Overstated" cost of materials in performing the services.

Similarly, Continental alleges "Wolla Oilfield breached the MSC by, among other things, submitting fraudulent invoices to Continental [that] vastly overstated . . . the cost

of materials used in performing those services." SAC ¶ 37. But again, to state a claim for breach of the MSC, Continental must identify a provision of the MSC that was breached. Regarding the cost of materials, Continental makes *one* conclusory allegation that "the parties agreed propane would be charged to Continental at cost as a pass through item." *Id.* ¶ 23.

Again, Continental does not allege sufficient *factual* matter to support this conclusory allegation of breach of the MSC regarding propane. Continental does not identify any provision of the MSC by which "the parties agreed propane would be charged to Continental at cost as a pass through item." *Id.*; *Duckett v. Okla. ex rel. Bd. of Regents of Univ. of Okla.,* 986 F. Supp. 2d 1249, 1258-59 (W.D. Okla. 2013) (finding that plaintiff failed to state a claim for breach where he did not identify any specific provision of the contract that was not performed). And Continental makes no factual allegations regarding the "cost of materials" whatsoever: what the cost was, what was charged, or when. Again, this one conclusory allegation that Wolla breached the MSC regarding the cost of materials is insufficient to state a claim for breach of contract under *Iqbal/Twombly*.

**B.      As a matter of law, the Oklahoma Consumer Protection Act does not apply here.**

Continental's claim under the Oklahoma Consumer Protection Act (the "OCPA") fails as a matter of law for two reasons: (1) Continental is not a consumer entitled to its protection, and (2) the OCPA does not apply extra-territorially and the alleged conduct occurred in North Dakota.

1. <u>Continental is not a "consumer" entitled to sue under the OCPA</u>.

First, the OCPA does not apply to service contracts like the Master Services Contract at issue here. The OCPA provides protection only to aggrieved "consumers." OKLA. STAT. TIT. 15 § 761.1(A) (2020); *Lumber 2, Inc. v. Ill. Tool Works, Inc.,* 261 P.3d 1143, 1146 (Okla. 2011) ("As the title provides, the subject of the Act is **consumer** protection.") (emphasis in original). The Oklahoma Supreme Court has defined "consumer" as used in the OCPA to mean "one who consumes or uses economic goods." *Lumber 2, Inc.,* 261 P.3d at 1149 ("Thus, under the plain and ordinary meaning of "consumer," i.e., one who consumes or uses economic goods, Lumber 2 has no claim under the OCPA.").

Based upon this definition of "consumer," the Oklahoma Supreme Court accordingly interpreted the OCPA to exclude contracts that are "nothing more than service contracts." *James v. Tyson Foods, Inc.,* 292 P.3d 10, 18 (Okla. 2012) ("The contracts entered into between the poultry growers and Tyson were nothing more than service contracts, in which the growers contracted to raise birds to maturity. Therefore, we hold that the contract growers are not 'aggrieved consumers' entitled to the protections of the Oklahoma Consumer Protection Act.").

Indeed, the principle that the OCPA does not apply to service contracts due to the meaning of "consumer" was applied by the Western District of Oklahoma to dismiss an OCPA claim regarding a service contract to transport compressed natural gas to northwest Oklahoma:

With respect to the purported counterclaim under the OCPA, plaintiffs dispute whether defendant is a "consumer" entitled to assert the Act's protections. Defendant acknowledges that it did not buy goods for its own use, which would likely qualify it for "consumer" status. *See Lumber 2, Inc. v. Illinois Tool Works, Inc,* 261 P.3d 1143, 1149 (Okla.2011) (defining "consumer" as "one who consumes or uses economic goods"). Rather, it argues that it is a consumer because it purchased "services," which fall within the scope of the OCPA. However, the Oklahoma Supreme Court has interpreted the Act to exclude those contracts which are "nothing more than service contracts." *James v. Tyson Foods, Inc.*, 292 P.3d 10, 18 (Okla.2012). Here, the contract at issue is essentially one for services—for the delivery of CNG. Defendant therefore fails to qualify as an aggrieved "consumer" under the Act, and its purported claim under the OCPA fails to state a claim.

*Sooner Hot Oil & Well Servs.*, 2014 WL 6455521, at *1.

Here, the same analysis applies and Continental's OCPA claim must be dismissed. It is undisputed that the contract at issue ("the Master Services Contract") is for services. *See* SAC ⁋ 8 ("Pursuant to the MSC, Wolla Oilfield agreed to provide hot oil services for Continental's oil wells in North Dakota."). Continental makes no allegations that would render it "one who consumes or uses economic goods." Even the meager allegation regarding cost of propane relates to propane *used by Wolla* in providing services under the MSC. Accordingly, pursuant to *Lumber 2, Inc.*, *James*, and *Sooner Hot Oil & Well Services, LLC*, Continental is not a "consumer" under the OCPA, and its claim for violation of the OCPA regarding the Master Services Contract fails as a matter of law.

2.  <u>The OCPA does not apply to transactions outside of Oklahoma</u>.

Second, even if the Master Services Contract somehow rendered Continental "one

who consumes or uses economic goods" under the OCPA (it does not), the OCPA does

not apply to acts that occurred outside of Oklahoma.

In *Steinbeck v. Dollar Thrifty Automobile Group, Inc.*, the Court explained:

> The Oklahoma Supreme Court has determined that the
> appropriate inquiry in deciding the applicability of a
> consumer protection statute is ***whether the consumer
> transaction occurred within the state***. *Harvell v. Goodyear
> Tire and Rubber Co.*, 164 P.3d 1028, 1037 (Okla. 2006). . . .
> Accordingly, although the OCPA is silent with respect to
> reach of the statute, it is reasonable to conclude that the
> Oklahoma Supreme Court's reasoning in *Harvell* applies to
> the OCPA. . . .
>
> . . . Even assuming that DTAG collected revenue from the
> Fee in its Oklahoma headquarters and mandated that branches
> in other states charge the Fee without exception, ***the rental
> agreement was entered into in Arizona and any allegedly
> deceptive acts occurred there***. The OCPA does not apply
> here, and accordingly, plaintiff has not stated a claim for
> relief pursuant to the OCPA.

No. 08-CV-0378-CVE-PJC, 2008 WL 4279798, at *3-4 (N.D. Okla. Sept. 15, 2008)

(emphasis added); *see Sallee v. Dollar Thrifty Automotive Grp., Inc.,* No. 14-CV-250-

GKF-PJC, 2015 WL 1281518, at *8 (N.D. Okla. Mar. 20, 2015) ("Indeed, this court has

held that the OCPA does not have extraterritorial effect.").[1]

---

[1] Extraterritorial application of a state statute may also implicate the Commerce
Clause. *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) ("the Commerce Clause
precludes the application of a state statute to commerce that takes place wholly outside of
the State's borders, whether or not the commerce has effects within the State"); *KT. & G
Corp v. Attorney Gen. of State of Okla.*, 535 F.3d 1114, 1143 (10th Cir. 2008) (state
statute may violate the dormant Commerce Clause "if it has the practical effect of

Under the same analysis, Continental fails to state a claim for violation of the OCPA against Wolla. Continental does not allege where the MSC was entered into (because it was North Dakota), nor does Continental allege *any* deceptive acts—or any acts at all—by Wolla in Oklahoma. Instead, with respect to the key inquiry identified in *Harvell* and *Steinbeck* of "whether the consumer transaction occurred within the state," Continental's allegations make clear that the transaction(s) occurred **in North Dakota**. SAC ¶ 8 ("Pursuant to the MSC, Wolla Oilfield agreed to provide hot oil services for Continental's oil wells in North Dakota."); *Kahn v. Davis,* No. 10-cv-01715-PAB-KMT, 2011 WL 4102328, at *2 (D. Colo. Sept. 14, 2011) ("[W]hen misrepresentations are the underlying events of a litigation, courts generally look to the place where the misrepresentations were made, not the place where they were received or relied upon to determine where the underlying events occurred."); *see also Yarbrough v. Elmber Bunker & Associates,* 669 F.2d 614, 617 (10th Cir. 1982) (rejecting an argument that the defendant's acts occurred in the state where plaintiff perceived the misrepresentations).

Because Continental admits that the transaction occurred in North Dakota and fails to allege any deceptive acts committed by Wolla in Oklahoma, the OCPA does not apply and Continental fails to allege a claim under the OCPA that is plausible on its face. Therefore, Continental's OCPA claim should be dismissed under Rule 12(b)(6).

---

extraterritorial control of commerce occurring entirely outside the boundaries of the state in question").

### C.     Continental fails to state a claim for fraud under Rule 9(b).

The elements of fraud are: "(1) [t]hat defendant made a material misrepresentation; (2) that it was false; (3) that he made it when he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Jonnada v. Liberty Ins. Corp.*, CIV-19-456-D, 2019 WL 6119233, at *4 (W.D. Okla. Nov. 18, 2019) (citing *State ex rel. Southwestern Bell Tel. Co. v. Brown*, 519 P.2d 491, 495 (Okla. 1974)).

To state a claim for fraud under Rule 9(b), the plaintiff must allege the "time, place, and contents of the false representation, the identity of the party making the false statements, and the consequences of the statements." *Bristow First Assembly of God v. BP p.l.c.*, 210 F. Supp. 3d 1284, 1296 (N.D. Okla. 2016) (citing *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

> 1. Continental fails to state a claim for fraud as a matter of law because it relies on the exact same conduct to assert its breach of contract claim.

"It is well-settled under Oklahoma law that 'a claim for fraud must be distinct from a claim for breach of contract.'" *Goode v. Nuance Communications, Inc.*, No. 17-CV-00472-GKF-JFJ, 2018 WL 3371091, at *7 (N.D. Okla. July 10, 2018) (quoting *McGregor v. Nat'l Steak Processors, Inc.*, No. 11-CV-0570-CVE-TLW, 2012 WL 314059, at *3 (N.D. Okla. Feb. 1, 2012)).  "Thus, ***where the facts alleged in a plaintiff's fraud claim are precisely the same as those alleged in his contract claim, a separate fraud claim will not be allowed***." *Id.* (emphasis added) (quoting *Horton v. Bank of Am.,*

*N.A.*, 189 F. Supp. 3d 1286, 1291 (N.D. Okla. 2016) (finding plaintiff failed to state a cause of action for fraud because his "fraud and breach-of-contract claims are based on precisely the same conduct, namely, that [defendant] collected or attempted to collect more money under the mortgage than it was contractually entitled.")).

Continental's attempt to simply "tack on" a fraud claim to its prior complaint violates this principle. Notably, Continental's Second Amended Complaint sets forth *the exact same facts* as its First Amended Complaint, despite the addition of fraud claims in the Second Amended Complaint. Continental alleges Wolla breached the MSC by submitting false invoices. SAC ¶ 37. The only addition to the SAC regarding fraud is Continental's formulaic recitation of the elements of fraud. *Id.* ¶¶ 45-49. Thus, Continental's breach of contract and fraud allegations are premised on the exact same facts.

This is the exact same context—payments—in which the *Horton* court dismissed the plaintiff's fraud claim for violation of the above principle. *Horton*, 189 F. Supp. 3d at 1291. It is also the same context in which the *Goode* court dismissed plaintiff's fraud claim. *Goode*, 2018 WL 3371091, at *8 ("The breach of contract claim is premised on Nuance's failure to pay plaintiffs for mandated rest periods and promised incentives. Any fraud claim premised on Nuance's statements regarding pay for rest periods and incentive pay necessarily must be premised on the same conduct and result in the same damages— wages and incentive payments owed. Thus, for this additional reason, plaintiffs' fraud claim is properly dismissed."). Accordingly, because "the facts alleged in a

[Continental's] fraud claim are precisely the same as those alleged in [its] contract claim, a separate fraud claim will not be allowed." *Id.* at *7.

## 2. Continental does not satisfy Rule 9(b)'s heightened pleading requirements.

Continental's Second Amended Complaint does not sufficiently identify the who, what, when, where, and how necessary to state a fraud claim. Specifically, (a) Continental fails to identify any allegedly fraudulent invoices outside of a three-week period in 2019 to support its purported three-year fraud claim, (b) Continental fails to allege a material misrepresentation, and (c) Continental fails to allege any facts supporting the element of detrimental reliance, and Each is discussed in turn.

### a. *Continental fails to identify any allegedly fraudulent invoices (i.e., false statements) outside of a three-week period—from September 28, 2019 to October 17, 2019— to support its purported three-year fraud claim.*

In support of its fraud claim, Continental makes the conclusory assertions that "Wolla Oilfield made false misrepresentations in the invoices it sent to Continental," and that "[a]s a direct and proximate result of Wolla Oilfield's fraud, Continental suffered damages to be proven at trial, but which Continental currently estimates exceed $2.4 million." SAC ¶¶ 45, 49. But Continental does not identify any specifics regarding those invoices—who sent them, who received them, what they contained, or when. While Continental provides some specific allegations regarding a few invoices during a three-week period from September 28, 2019 to October 17, 2019 (SAC, ¶¶ 25-26), it provides no other details whatsoever to support its conclusory allegation of fraud over a three-year period totaling $2.4 million. *See* SAC ¶ 29 ("Continental has been significantly

overcharged by at least $2.4 million from 2017-2019."). Indeed, its meager allegations regarding allegedly fraudulent invoices during this three week period are totally disconnected from its later conclusory assertion of fraud from 2017-2019 and damages totaling $2.4 million. In short, identifying invoices during a three week period in 2019 is insufficient to put Wolla on notice of which invoices are at issue in Continental's conclusory allegations of a three year fraud totaling $2.4 million in damages. Rule 9(b) requires more for allegations of fraud.

These failures require dismissal. *See U.S. ex rel. Dillahunty v. Chromalloy Oklahoma,* CIV-08-944-L, 2009 WL 3837294, at *4 (W.D. Okla. Nov. 16, 2009) (granting a motion to dismiss because, among other things, plaintiff did "not provide any details such as the **dates of the invoices**, the **contents of the billing statements**—including whether the statements contained certifications of compliance with the process specifications—or the companies involved in the billings.") (emphasis added); *see also U.S. ex rel. Lacy v. New Horizons, Inc.,* CIV-07-0137-HE, 2008 WL 4415648, at *3 (W.D. Okla. Sept. 25, 2008), *aff'd*, 348 Fed. Appx. 421 (10th Cir. 2009) (granting defendants' motion to dismiss plaintiff's fraud claim for an alleged overbilling scheme because plaintiff failed to indicate "such factual details as which facilities were involved, when all of the over-billing occurred, how many patient days were over-billed for, or estimated the amount over-billed for each patient."). Similar to the plaintiffs in *Chromalloy* and *New Horizons*, Continental failed to allege facts sufficient to state its claim for fraud under Rule 9(b).

## b. *Continental fails to allege facts supporting a material misrepresentation under Rule 9(b)*.

In the few invoices Continental does identify, it describes types two "overbilling" – invoices allegedly overstating the amount of hours on-site (SAC ⁋ 25) and invoices allegedly stating an incorrect date of work (SAC ⁋ 26).  Continental also appears to include overbilling for propane in its fraud allegations.  Each is discussed in turn.

Continental's allegations of a material misrepresentation regarding "overstated hours" (SAC ⁋ 25) necessarily hinges on its allegation that "Wolla Oilfield agreed to charge Continental an hourly rate for the hot oil services provided to Continental."  *Id.*, ⁋ 10.  But as discussed above, Continental does not allege sufficient factual matter to plausibly support this conclusory allegation under Rule 8.  This is even more apparent under the heightened pleading requirement of Rule 9(b).  At a minimum, Continental must allege *who* agreed to "an hourly rate," for what services, and when.  Because Continental does not plead sufficient facts under Rule 9(b) to show that Continental and Wolla agreed to an hourly rate (for what work, or when, and who made that agreement), Continental therefore fails to plead that the amount of hours stated on any invoice is a material misrepresentation.

Similarly, regarding the invoices allegedly stating an *incorrect date of work* (SAC ⁋ 26), Continental fails to allege sufficient facts to support the materiality of the dates stated.  Importantly, in paragraph 26 of the SAC regarding "ghost billing," Continental does not allege that the work billed for *was not performed*.  Instead, Continental is careful to allege only that the work did not occur "*on that day*" stated in the invoice.  SAC

¶¶ 26(a), (b), (c), (d), (e), (f). Indeed, Continental admits that the work did occur, just that the date of the work stated on the invoice was incorrect. *Id.* ¶ 27 ("billings from certain days *were moved to other days where no work occurred* in order to prevent Continental from detecting Wolla Oilfield's excessive billing practices.") (emphasis added). Even assuming that the date of work stated on an invoice was false, Continental fails to allege facts to support why, given that the work did occur as Continental acknowledges, the date of work stated on the invoice is a *material* misrepresentation. Because Continental has not alleged any facts to support an inference that it was billed for work that *did not occur*, and has only alleged that certain invoices stated an incorrect date, Continental has failed to allege a material misrepresentation regarding the so-called "ghost billing" described in paragraph 26.[2]

Additionally, Continental's fraud claim appears to be based on the additional contention that it was fraudulently overbilled for propane. Such allegations of fraud regarding propane necessarily rest on the allegation that "the parties agreed propane would be charged to Continental at cost as a pass-through item." *Id.* ¶ 23. But again, Continental fails to plead with particularity *when* such an agreement regarding propane was reached, any other terms of that agreement such as duration, or who made such agreement on each side. Without an agreement that propane would be billed to

---

[2] If Continental's allegations in SAC ¶ 26 are simply more allegations regarding "overstated hours" (rather than *the date* stated on the invoice being a material misrepresentation), then such allegations suffer the same infirmity described above with respect to materiality: Continental's failure to plead with particularity an agreement to hourly billing, which is necessary in order to make the amount of hours stated on an invoice relevant.

Continental "at cost" (or at any other price), Continental has failed to plausibly allege a material misrepresentation regarding cost. Continental has made no factual allegations, let alone factual allegations sufficient under Rule 9(b), to identify how Wolla allegedly misrepresented propane charges to Continental. *See New Horizons, Inc.*, 2008 WL 4415648, at *2 (finding plaintiff failed to state a claim for fraud because: "no specific dollar amounts are attached to the allegations; no documentation or reference to specific, identifiable records is stated; and no indication of the specific amount that ultimately was overcharged to the government is included.").

<ol type="c" start="3">
<li><u>*With respect to the invoices identified in the three-week period, Continental fails to allege facts supporting detrimental reliance under Rule 9(b)*</u>.</li>
</ol>

With respect to the very few invoices it did identify with specificity, Continental has not alleged the facts necessary to establish a key element of fraud—detrimental reliance. A fraud claim "require[s] detrimental reliance by the person complaining" of the fraud. *Howell v. Texaco Inc.*, 112 P.3d 1154, 1161 (Okla. 2004). Conclusory allegations lacking factual specificity regarding reliance are insufficient. *Kunneman Properties, LLC v. Marathon Oil Co*., 17-CV-00456-GKF-JFJ, 2019 WL 4658362, at *5 (N.D. Okla. Sept. 24, 2019).

As discussed above, Continental pleads factual matter regarding only a few invoices covering a three-week period. SAC ¶¶ 25-26. Importantly, **Continental does not allege that it paid those invoices** (because it did not). Thus, Continental has failed to set forth any *facts*, let alone facts with the particularity required by Rule 9(b), to plausibly support the element of detrimental reliance with regard to those invoices. Continental's failure is

fatal to its fraud claim. *See Chieftain Royalty Co. v. Dominion Oklahoma Texas Expl. & Prod., Inc.*, CIV-11-344-R, 2011 WL 9527717, at *4 (W.D. Okla. July 14, 2011) (finding that "Plaintiffs [] failed to allege that they relied to their detriment on the alleged false and misleading monthly statements sent by [defendant], and any facts showing that that was the case. Accordingly, they have failed to state claims for actual and/or constructive fraud and/or deceit on which relief can be granted.").

### D. <u>Continental fails to state a claim for constructive fraud</u>.

"Constructive fraud is the concealment of a material fact by one who has a duty to disclose[,] and to be actionable, requires detrimental reliance by the person complaining." *Torrone v. Safeco Ins. Co. of Am.*, 17-CV-0534-CVE-FHM, 2018 WL 327769, at *2 (N.D. Okla. Jan. 8, 2018) (citing *Howell v. Texaco*, 112 P.3d 1154, 1161 (Okla. 2004)).

1. <u>Continental's constructive fraud claim should likewise be dismissed because it, too, relies on the exact same conduct as Continental's breach of contract claim</u>.

As described above with respect to actual fraud, Continental also relies on the same conduct to establish its breach of contract and constructive fraud claim. *See* SAC ¶¶ 37, 51. Accordingly, Continental's claim for constructive fraud should likewise be dismissed under *Goode* and *Horton*.

2. <u>Continental also fails to plead facts supporting the existence of a "duty"</u>.

Constructive fraud "requires a showing that the defendant owed some form of duty to the plaintiff." *Conrad v. Phone Directories LP*, CV-07-859-R, 2007 WL 9717770, at *3 (W.D. Okla. Nov. 6, 2007), appeal dismissed and remanded sub nom. *Conrad v.*

*Phone Directories Co., Inc.*, 585 F.3d 1376 (10th Cir. 2009) (internal citation omitted).

Oklahoma recognizes that "a duty to speak may arise from partial disclosure if, under the circumstances, partial disclosure is misleading." *Roberts Ranch Co. v. Exxon Corp.*, 43 F. Supp. 2d 1252, 1259 n.12 (W.D. Okla. 1997) (applying Oklahoma law).

Continental's allegations of constructive fraud are nothing more than vague, conclusory statements reciting the elements of constructive fraud:

> 51. Wolla Oilfield sent Continental invoices purporting to detail the extent and nature of the work Wolla Oilfield performed for Continental. Because Wolla Oilfield sent these invoices to Continental, Wolla Oilfield owed Continental a duty to fully disclose the extent and nature of the work that Wolla Oilfield performed for Continental.
>
> 52. Wolla Oilfield failed to disclose the true manner in which it was performing work and billing Continental for that work, with the intention of creating a false impression for Continental. For example, upon information and belief, Wolla Oilfield frequently billed Continental on a per-well basis, and not on a per-hour basis, but failed to disclose that practice to Continental.

SAC ¶¶ 51-52.    Such ambiguous allegations are insufficient to state a claim for constructive fraud under Rule 9(b), which requires facts with specificity.  Regarding the element of the existence of a duty due to a misleading partial disclosure, Continental does not allege with any specificity *what* the partial disclosure was, *what* invoices contain such a partial disclosure, or *how* such partial disclosure was misleading. Thus, Continental's allegations lack the factual specificity necessary to support a duty owed by Wolla to Continental based on a misleading partial disclosure. *See Cantwell v. De La Garza,* CV-18-272-D, 2018 WL 5929638, at *3 (W.D. Okla. Nov. 13, 2018) (dismissing plaintiff's

constructive fraud claim because plaintiff failed to identify facts sufficient to establish the defendant owed a duty or withheld information from the plaintiff).

3. <u>Continental fails to plead facts supporting a material misrepresentation under Rule 9(b)</u>.

"Constructive fraud is the concealment of a ***material*** fact . . . ." *Torrone*, 2018 WL 327769, at *2 (emphasis added). The *only* allegation Continental makes in support of its constructive fraud claim is that "Wolla Oilfield frequently billed Continental on a per-well basis, and not on a per-hour basis, but failed to disclose that practice to Continental." SAC ¶ 52. Again, this conclusory statement is insufficient under Rule 9(b). Continental fails to plead any facts regarding *when* Wolla billed Continental on a per-well basis, the *contents* of those "false" invoices, or *who* sent or received such invoices. Furthermore, Continental again fails to plead with any particularity facts as to why billing on a per-well basis would be "false;" i.e., Continental fails to allege *when* and *by whom* an agreement was reached between Wolla and Continental that such unidentified work would be on a per-hour basis. Without such specificity, Continental has failed to allege facts to support a material misrepresentation under Rule 9(b).

4. <u>Continental fails to plead facts supporting detrimental reliance under Rule 9(b)</u>.

Continental's constructive fraud claim—which also requires the essential element of reliance—does not plausibly state a claim for fraud. *See Dominion Oklahoma Texas Expl. & Prod., Inc.*, 2011 WL 9527717, at *4. As discussed above, conclusory allegations of fraud are insufficient. With respect to the few invoices that Continental has actually identified, Continental has failed to allege facts establishing detrimental reliance

for the same reasons as its actual fraud claim. Specifically, Continental does not allege that it paid (and therefore acted in reliance on) the few invoices it identifies in its SAC ¶¶ 25-26. Accordingly, Continental has failed to state a claim constructive fraud.

**E.** **Continental fails state a claim for unjust enrichment.**

To properly plead a claim for unjust enrichment, the plaintiff must show "enrichment to another coupled with a resulting injustice." *Cty. Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1518 (10th Cir.1991) (internal citation omitted). Continental has not set forth *facts* alleging a resulting injustice—i.e., that Wolla received payments from Continental in excess of the reasonable value of the work Wolla performed for Continental.

In support of its unjust enrichment claim, Continental makes the one-sentence, conclusory assertion that "Wolla Oilfield did not perform the hot oil services that it claimed to perform." SAC ¶ 58. But Continental makes no *factual* allegations whatsoever to support this conclusory statement. Continental does not identify *what* those services were, *when* they were billed, *when* they were paid by Continental, or *how much* Continental paid. And Continental cannot make use of the few factual allegations in SAC paragraphs 25 and 26 to support this conclusory statement, because, again, it *has not alleged that it paid the invoices it identifies as false*. The vague and conclusory statement in paragraph 58 that "Wolla Oilfield did not perform the hot oil services that it claimed to perform" is insufficient to state a claim for unjust enrichment. *See Lee v. Enter. Fin. Group*, CIV-08-1221-M, 2009 WL 1362605, at *2 (W.D. Okla. May 14, 2009) (dismissing plaintiffs' unjust enrichment claim because plaintiffs, among other

things, failed to "allege facts which explain how all defendants could have wrongfully retained the monies involved."); *see also I.P.I.C., GSP, S.L. v. Ruhrpumpen, Inc.*, 08-CV-0510-CVEPJC, 2008 WL 5122697, at *4 (N.D. Okla. Dec. 4, 2008) (dismissing plaintiff's claim for unjust enrichment because it "offere[d] no factual averments in support of…" its allegation that "[defendant] benefited from its work.").

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Wolla Oilfield Services, LLC respectfully requests that the Court dismiss Plaintiff's claims for breach of contract, violation of the Oklahoma Consumer Protection Act, actual fraud, constructive fraud, and unjust enrichment pursuant to Rule 12(b)(6).

Respectfully Submitted,

s/Daniel G. Webber, Jr.
Daniel G. Webber, Jr., OBA No. 16332
Chance L. Pearson, OBA No. 22269
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK 73104
Telephone:   (405) 239-6040
Facsimile:    (405) 239-6766
Emails:        dwebber@ryanwhaley.com
                    cpearson@ryanwhaley.com

-and-

John T. Gerhart, Jr. (*pro hac vice*)
Texas Bar No. 00784122
jgerhart@HuntonAK.com
Grayson L. Linyard (*pro hac vice*)
Texas Bar No. 24070150
glinyard@HuntonAK.com
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
(214) 979-3000
(214) 740-7110 (Fax)

**ATTORNEYS FOR DEFENDANT
WOLLA OILFIELD SERVICES, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2020, I electronically transmitted the attached document to the Clerk of Court using the Electronic Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

s/Daniel G. Webber, Jr.
Daniel G. Webber, Jr.